UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

VARIABLE INVESTMENT ASSOCIATES, INC. and GREGORY WILSON,

*Plaintiffs*,

v.

ERIC CHOI, AUSTIN TROMBLEY, ALINA TROMBLEY, SATSCHEL, INC., and LIQUIDITY.IO, LLC,

*Defendants*,

and

THE FINANCIAL INDUSTRY REGULATORY AUTHORITY,

*a Nominal Defendant*.

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

Case No. 4:26-cv-4145

**COMPLAINT**

**JURY TRIAL DEMANDED**

**COMPLAINT**

Variable Investment Associates, Inc. ("VIA") and Gregory Wilson, for their complaint against Eric Choi, Austin Trombley, Alina Trombley, Satschel, Inc. ("Satschel"), and Liquidity.IO, LLC ("Liquidity.IO"),[1] state as follows:

[1] Mr. Choi, Mr. Trombley, and Mrs. Trombley are referred to herein, collectively, as the "Individual Defendants." The Financial Industry Regulatory Authority, Inc. ("FINRA") is a nominal Defendant named in this litigation for injunctive relief.

## INTRODUCTION

VIA and Mr. Wilson seek to recover VIA's intangible property rights in an alternative trading system, including its program and source code, and/or monetary damages. In 2023, under a Purchase and Sale Agreement ("Purchase Agreement"), Satschel agreed to buy VIA's shares from Gregory Wilson for three million dollars and to jointly develop a new registered alternative trading system ("Trading System"). Satschel and the Individual Defendants misappropriated the intangible property rights to that Trading System and unlawfully transferred them to Liquidity.IO. Satschel then defaulted by refusing to pay Gregory Wilson. FINRA is named as a nominal Defendant for injunctive relief because it permitted operation of the Trading System through Liquidity.IO, even though VIA owns the underlying rights to that system.

## PARTIES, JURISDICTION, AND VENUE

1. VIA is a corporation formed under the laws of the State of South Dakota with its principal place of business in this state. It is a registered securities broker dealer with the United States Securities and Exchange Commission, a FINRA member firm, and possesses the regulatory authorization to operate an alternative trading system(s) ("ATS").

2. Gregory Wilson resides in and is therefore a citizen of the State of South Dakota.

3. Eric Choi is the Chairman and President of Satschel and serves on the board of directors of Liquidity.IO. Mr. Choi is believed to reside in Whitefish, Montana, and is therefore a citizen of Montana. Mr. Choi was also formerly the Chief Executive Officer of Liquidity.IO.

4. Austin Dale Trombley is the Chief Executive Officer and a member of the Board of Directors of Satschel. Mr. Trombley is believed to reside in Houston, Texas, and is therefore a citizen of Texas.

5. Alina Nicole Trombley is an Owner and the Chief Compliance Officer of Satschel. Mrs. Trombley is believed to reside with her husband, Austin, in Houston, Texas, and is therefore a citizen of Texas.

6. Liquidity.IO, LLC (“Liquidity.IO”), formerly known as ARQ Advisors, LLC, is a registered securities broker dealer with FINRA and is identified by Central Registration Depository Number 289499. The company was organized in Delaware, and its principal place of business is located at 5800 Gasparilla Road, Building C, Suite 11, Boca Grande, FL 33921. Satschel, Eric Choi, Marlon Bevaun, and Coleman Frederick Church are the members of Liquidity.IO.[2]

7. Satschel, Inc. (“Satschel”) is a Delaware corporation with its principal place of business located in Dover, Delaware.

8. The Financial Industry Regulatory Authority, Inc. (“FINRA”) is a self-regulatory organization for broker dealers in the United States. It is a non-profit Delaware corporation with its principal place of business located in Washington, DC.

9. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332. Federal question jurisdiction exists because this action arises in part under the laws of the United States, i.e., the Defend Trade Secrets Act, 18 U.S.C. § 1836(c), involving alleged misappropriation of trade secrets used or intended for use in interstate commerce. Diversity jurisdiction also exists because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

---

[2] Marlon Bevaun is a citizen of Georgia. He is believed to reside in Roswell, GA. Coleman Frederick Church is a citizen of Florida. He is believed to reside in Boca Grande, FL.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367, because the remaining claims form part of the same Article III case or controversy as the claims within the Court's original jurisdiction.

11. This Court has personal jurisdiction over the Individual Defendants and Liquidity.IO under South Dakota's long-arm statute and the Due Process Clause of the Fourteenth Amendment. These non-resident Defendants purposefully availed themselves of conducting activities in South Dakota, have minimum, non-random, and non-fortuitous contacts with the state, and Plaintiffs' claims arise from or relate to those contacts.

12. Venue is proper pursuant to 28 U.S.C. § 1391. This is the judicial district in which a substantial part of the events giving rise to the claims occurred.

13. Section 26 of the parties' Purchase Agreement requires all disputes arising from the agreement or related transactions to be tried exclusively in the state or federal courts in Minnehaha County, South Dakota.

## FACTS

14. In November of 2022, a nonbinding Letter of Intent was signed by Gregory Wilson and Eric Choi, on behalf of Satschel, a true and correct copy of which is attached as Exhibit A.

15. Pursuant to the Letter of Intent:

> Subject to death or disability, Gregory Wilson will remain as President, Chief Executive Officer, Chief Compliance Officer, and Chief Operating Officer of VIA and Manager of WIMO for a period of four (4) years following contract execution (the "**Transition Period**")…… **Upon contract execution, Gregory Wilson will begin assisting with the development of the alternative trading system proposed by Satschel. It is the parties' intention that the system be developed following contract execution, but that all right, title, and interest to the system be transferred to Satschel with the purchase of VIA**. (emphasis added).

16. Eric Choi, on behalf of Satschel, directed that any reference to a "new trading system" be removed from the Purchase Agreement. Mr. Choi was concerned that referring to a "new trading system" would cause FINRA to engage in a more comprehensive review of any regulatory application. He therefore sought to complete the regulatory application for the change in ownership and control of VIA to Satschel before disclosing to FINRA his true intentions to create a new trading system at VIA.

17. In a January 8, 2023 draft of the Purchase Agreement distributed by counsel for Mr. Wilson, Section 23 stated as follows:

> Development of Alternative Trading System. Upon contract execution, Gregory Wilson will begin assisting with the development of the alternative trading system proposed by Purchaser. It is the parties' intention that the system be developed following contract execution, but that all right, title, and interest to the system be transferred to Satschel with the purchase and change of ownership and control of VIA. In the discharge of his duties, Gregory Wilson shall be permitted to retain independent legal counsel or consultants and the reasonable expense incurred shall be assessed to Purchaser. Gregory Wilson shall have reasonable, but broad discretion regarding regulatory and compliance matters and the implementation of the proposed trading system by Purchaser during the Transition period. Purchaser may also retain, at its own expense, independent legal counsel and consultants to assist with regulatory and compliance matters.

18. In an email response dated January 9, 2023, Mr. Choi wrote as follows:

> 3. Proposed trading system. Why don't we just eliminate a reference to any proposed trading system or new trading system. For our purposes until the end of the transition period, all that matters is we will own the profits to Liquidity Maker and Greg will own all the rest. Our intention is to utilize Greg's existing code and possibly update it for Liquidity Maker but before we see it we don't want to raise any eyebrows as if we intend to completely create something new. That is not the case as of right now. And clearly nothing will happen on that site without Greg's approval and help.

19. In January of 2023, Satschel, under the control of Eric Choi and Austin and Alina Trombley, entered into the Purchase Agreement to purchase VIA, a true and correct copy of which is attached as Exhibit B.

20. Section 2 of the Purchase Agreement set the purchase price at three million dollars payable in installments: one million dollars upon contract execution ("Initial Payment"), five hundred thousand dollars after one year ("First Interim Payment"), an additional five hundred thousand dollars after two years ("Second Interim Payment"), and one million dollars four years after ("Final Payment").

21. Under Section 15 of the Purchase Agreement, Satschel granted Mr. Wilson a security interest to secure payment of the purchase price in all of Satschel's "machinery, equipment, fixtures, appliances and furniture, inventory, accounts, contract rights, accounts receivable, cash or non-cash proceeds, intellectual property and goodwill, commercial tort claims, and all other tangible personal property or general intangibles, whether now owned or after acquired, as well as any additions, accessions, substitutions, or replacements of collateral."

22. Under Section 16.1 of the Purchase Agreement, subject to death or disability, Gregory Wilson would remain as President, Chief Executive Officer, and Chief Compliance Officer of VIA for four years following contract execution.

23. Section 25.1 of the Purchase Agreement defines material events of default, which include Satschel failing to make payments when due or failing to obtain FINRA approval for the change in ownership and control of VIA within two years of contract execution.

24. On or about January 12-13 of 2023, the parties executed the Purchase Agreement and Satschel made the Initial Payment.

25. The Trading System facilitates online securities trade matching and execution. A description of the Trading System, as proposed by the parties prior to contract execution, was provided by Alina Trombley in an October 31, 2022 email, a true and correct copy of which is hereby attached as Exhibit C.

26. The Trading System program and its source code are confidential, proprietary, and constitute trade secret information.

27. Access to the Trading System's program information and source code was restricted to executive management at VIA, the Individual Defendants, and/or a team of programmers contracted for the system's development.

28. The parties further executed the Mutual Non-Disclosure Agreement ("Confidentiality Agreement") attached hereto as Exhibit D.

29. VIA is the rightful and lawful owner of the Trading System because the program and source code and all other rights, title, and interests therein were assigned to VIA and would subsequently only transfer to Satschel, indirectly, upon payment in full of the three million dollars and Satschel's acquisition of VIA from Gregory Wilson.

30. Satschel failed to make the First Interim Payment, or any further payments, and thereby defaulted under the Purchase Agreement.

31. Satschel further failed to obtain FINRA approval for a change in ownership and control of VIA within two years of contract execution.

32. The referenced defaults were material breaches of the Purchase Agreement, resulting in the forfeiture of Satschel's rights to further performance from Mr. Wilson; the transfer of VIA's stock and the associated ownership rights to VIA's intangible property, including the Trading System.

33. Between June to August of 2023, unbeknownst to VIA and Mr. Wilson, Satschel, working through the Individual Defendants, elected to operate the Trading System designated for VIA at Liquidity.IO.

34. In August of 2023, unbeknownst to VIA and Mr. Wilson, an application was submitted with FINRA to operate the Trading System at Liquidity.IO and regulatory approval was granted in April of 2024, after which time Defendants began to operate the Trading System.

35. Satschel's and the Individual Defendants' decision to operate the Trading System was made without VIA's permission or license to use VIA's intangible property rights, including rights in the program and source code.

36. FINRA's approval was improper and unlawful because Liquidity.IO and its agents misappropriated intangible property rights belonging to VIA, including the Trading System program and source code, and presented it as their own.

37. Defendants are using the Trading System program and its source code, which constitute trade secrets.

38. Mr. Wilson and VIA discovered Defendants' misappropriation of the Trading System and their scheme to operate it at Liquidity.IO in or about December 2024.

39. Unless enjoined by this Court, Defendants will continue with their unlawful use of the confidential, proprietary, and trade secret information of VIA to operate the Trading System at Liquidity.IO.

40. Defendants' conduct has resulted in the nonpayment of the two million dollars remaining due to Gregory Wilson as well as the loss of the program and source code for the Trading System.

## COUNT I
## BREACH OF CONTRACT / BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
(Wilson v. Satschel)

41. Mr. Wilson incorporates, by reference, the allegations contained in paragraphs 1 through 40 of this Complaint as if restated in full herein.

42. Mr. Wilson and Satschel entered into the Purchase Agreement, which was a legally binding contract.

43. The parties contemplated in their Letter of Intent (Exhibit A) that Gregory Wilson would assist Satchel in developing the Trading System and the rights, title, and interest to which would only transfer, indirectly, to Satschel with the completion of its purchase of VIA, which purchase never occurred.

44. Any reference to the Trading System was removed from the Purchase Agreement solely at Mr. Choi's insistence, to avoid higher scrutiny by FINRA.

45. Satschel breached the Purchase Agreement by failing to make the First Interim Payment, or any subsequent payments, when due.

46. Satschel further breached the Purchase Agreement by failing to obtain FINRA regulatory approval for the proposed change in ownership and control of VIA within two years of contract execution.

47. The breaches were material under Section 25.1 of the Purchase Agreement, resulting in the forfeiture of Satschel's rights to the stock in VIA and the associated indirect rights to the Trading System owned by VIA.

48. As a result of Satschel's default under the Purchase Agreement, it forfeited all claims to the intangible property rights to the Trading System, including program and source code, belonging to VIA.

49. Despite having no license or other authorization to use VIA's intangible property, Satschel misappropriated the Trading System, including program and source code, and launched the system through Liquidity.IO.

50. Under South Dakota law, every contract contains an implied covenant of good faith and fair dealing prohibiting either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract.

51. Satschel breached the implied covenant of good faith and fair dealing by misappropriating VIA's intangible property rights and operating the Trading System at Liquidity.IO

52. Satschel's decision to operate the Trading System at another broker dealer was not made in good faith. Instead, Satschel used Mr. Wilson's expertise, as well as VIA's other confidential and proprietary information, in the creation of the Trading System and then effectively stole all of the intangible property rights without paying Mr. Wilson the remaining two million dollars due under the Purchase Agreement.

53. Mr. Wilson has been damaged by Satschel's breaches. He has not been paid the remaining two million dollars due under the Purchase Agreement. Satschel also effectively stripped the intangible property rights held by VIA, of which Mr. Wilson remains the sole shareholder, and used that information to operate the Trading System at Liquidity.IO.

WHEREFORE, Mr. Wilson respectfully requests that the Court award actual and compensatory damages in an amount determined at trial; enter a mandatory injunction requiring Satschel to return all intangible property related to the Trading System, including program and source code, and destroy any copies; grant an order requiring Liquidity.IO to cease operating the Trading System; and enter an injunction prohibiting FINRA from permitting operation of that system.

**COUNT II**
**UNJUST ENRICHMENT**
(VIA and Wilson v. Satchel and Liquidity.IO)

54. VIA and Mr. Wilson incorporate, by reference, their allegations contained in paragraphs 1 through 40 of this Complaint as if restated in full herein.

55. Satschel and Liquidity.IO have been unjustly enriched through the wrongful conduct identified herein.

56. To recover under a claim of unjust enrichment under South Dakota law, a plaintiff must show that the defendant received a benefit, the defendant was aware it was receiving a benefit, and that it is inequitable to allow the defendant to retain this benefit without paying for it.

57. Gregory Wilson provided substantial assistance to Satschel in developing the Trading System, including sharing his personal expertise as well as providing demonstrations of VIA's systems, procedures, and programs.

58. Mr. Wilson provided that substantial assistance because it was contemplated by the parties' Agreement and in consideration of the three million dollars he would receive for the sale of his companies.

59. Satschel was aware of the benefits it was receiving. Satschel sought to develop a new alternative trading system, and a material term of the parties' agreement was that Mr. Wilson stay associated with VIA for a period of four years following contract execution to provide assistance with the development of the Trading System and assistance with the operation of a registered securities broker dealer in general. Moreover, Satschel specifically requested to view VIA's confidential and proprietary information, including its systems, procedures, and programs.

60. Liquidity.IO is Satschel's subsidiary and is operating the Trading System previously designated for and still owned by VIA.

61. It is inequitable to allow Satschel and Liquidity.IO to retain the benefit of Mr. Wilson's assistance and expertise and the use of VIA's confidential and proprietary information without paying for it. Satschel misappropriated intangible property rights belonging to VIA and used those for the operation of the Trading System with a different broker dealer, Liquidity.IO, while not paying the amounts due to Mr. Wilson.

62. To the extent that an adequate remedy at law is not available or will not provide sufficient and just compensation for the benefits conferred to either Satschel or Liquidity.IO, VIA and Mr. Wilson seek equitable relief by way of an award of unjust enrichment.

WHEREFORE, Mr. Wilson and VIA respectfully request an equitable award for the value of the benefits conferred to Satschel and Liquidity.IO.

**COUNT III**
**TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP OR AN EXPECTANCY**
(Wilson v. Choi, Trombley, Trombley, and Liquidity.IO)

63. Mr. Wilson incorporates, by reference, the allegations contained in paragraphs 1 through 40 of this Complaint as if restated in full herein.

64. Mr. Wilson had a valid business relationship and expectancy with Satschel under the Purchase Agreement (Exhibit B).

65. Under the Purchase Agreement, Mr. Wilson contracted to receive the payment of three million dollars for the sale of his companies.

66. VIA owns the rights to the Trading System.

67. Upon payment in full of the three million dollars owed to Gregory Wilson under the Purchase Agreement, the rights to the Trading System would transfer to Satschel, indirectly, with the purchase of VIA.

68. Unbeknownst to Mr. Wilson or VIA, in or about June of 2023, the Individual Defendants devised a scheme to transfer the intangible property rights for the Trading System to Liquidity.IO and thereafter operate the Trading System through that broker dealer.

69. A regulatory application to operate the trading system at Liquidity.IO was filed in August of 2023 and approved by FINRA in April of 2024.

70. The Individual Defendants and Liquidity.IO had knowledge of Mr. Wilson's relationship and business expectancy.

71. The Individual Defendants are controlling owners, executive officers, and/or directors of Satschel and therefore had actual knowledge of the agreement between Mr. Wilson and Satschel.

72. The Individual Defendants participated in the contract negotiations for the purchase and in the due diligence of VIA and Mr. Choi signed both the parties' Letter of Intent and the Purchase Agreement.

73. The transfer of the Trading System to Liquidity.IO constitutes an intentional and unjustified act of interference with Mr. Wilson's contractual rights under the Purchase Agreement as well as the business expectancy created thereby.

74. The Individual Defendants interfered with that business expectancy by misappropriating VIA's proprietary and confidential information and then operating the Trading System at Liquidity.IO.

75. Liquidity.IO interfered with Mr. Wilson's business expectancy by accepting and using VIA's proprietary and confidential information for the Trading System.

76. Liquidity.IO was aware that the Trading System program and source code belonged to VIA because Liquidity.IO is primarily owned by Satschel and operated under the control, indirectly, of the Individual Defendants. Any knowledge of Satschel and the Individual Defendants is imputed to Liquidity.IO.

77. Mr. Wilson has suffered actual damages in the amount of two million dollars, the difference between the proceeds received and the amount contracted for the sale of his companies.

78. Mr. Wilson was contracted to receive an additional two million dollars from Satschel for the sale of his companies but, due to the Individual Defendants' and Liquidity.IO's interference, has not been paid.

79. The Individual Defendants and Liquidity.IO have been guilty of malice and committed the torts referenced herein intentionally or by willful and wanton misconduct.

WHEREFORE, Mr. Wilson respectfully requests the Court enter an award of actual, compensatory damages in the amount of two million dollars or such other amount as is determined at trial. Mr. Wilson also requests that the jury award, in addition to compensatory damages, punitive damages in accordance with SDCL § 21-3-2 for the sake of example and by way of punishing the Individual Defendants and Liquidity.IO.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE FEDERAL DEFEND TRADE SECRETS ACT

(VIA v. Choi, Trombley, Trombley, Satschel, and Liquidity.IO)

80. VIA incorporates, by reference, the allegations contained in paragraphs 1 through 79 of this Complaint as if restated in full herein.

81. VIA is the owner of all right, title, and interest in the Trading System, including its program and source code.

82. Pursuant to the parties' Letter of Intent and the Purchase Agreement, the parties contemplated the joint development of the Trading System.

83. The parties agreed that the intangible property rights to that system, including program and source code, would be assigned to VIA, jointly further developed, and, upon payment in full of the three million dollars owed to Gregory Wilson, would transfer to Satschel, indirectly, by and through its acquisition of VIA.

84. Satschel defaulted in its obligations under the Purchase Agreement and therefore never acquired the right, title, and interest to the Trading System, including the program and source code.

85. Mr. Wilson provided substantial assistance in the development of that system as such was contemplated by the Purchase Agreement and in consideration of the three million dollars Mr. Wilson would receive for the sale of his companies.

86. The program and source code of the Trading System constitute protectable trade secrets under 18 U.S.C. § 1839(3) because VIA took reasonable measures to keep such information secret and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

87. Access to the program information, including source code, was restricted to executive management at VIA, the Individual Defendants, and/or a team of programmers contracted for the development of the Trading System.

88. The parties executed the Confidentiality Agreement (Exhibit D).

89. The Confidentiality Agreement protects the disclosure of confidential and proprietary information, including trade secrets, and applies to all business dealings and relations between the parties, from and after the date of the execution and survived termination following Satschel's default.

90. This confidential, proprietary, and trade secret information relates to products or services used or intended to be used in interstate commerce.

91. In violation of the Defend Trade Secrets Act, the Individual Defendants and Satschel misappropriated VIA's confidential, proprietary, and trade secret information by effectively stealing the program and source code and operating the Trading System through Liquidity.IO.

92. Liquidity.IO was aware that the trading system program and source code belonged to VIA because the company is primarily owned by Satschel and operated under the control, indirectly, of the Individual Defendants. Any knowledge of Satschel and the Individual Defendants is imputed to Liquidity.IO.

93. The Defendants' misappropriation is likely to continue unless it is enjoined.

94. Defendants' misappropriation of the trade secret information was intentional, knowing, willful, and malicious.

WHEREFORE, VIA respectfully requests actual and compensatory damages in an amount determined at trial; a mandatory injunction requiring Defendants to return all intangible property related to the Trading System, including program and source code, and destroy any copies; punitive or exemplary damages under 18 U.S.C. § 1636(b)(3); an order requiring Liquidity.IO to cease operating the unlawfully copied system; and an injunction prohibiting FINRA from permitting operation of that system.

**COUNT V**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE SOUTH DAKOTA UNIFORM TRADE SECRETS ACT**
(VIA v. Choi, Trombley, Trombley, Satschel, and Liquidity.IO)

95. VIA incorporates, by reference, the allegations contained in paragraphs 1 through 79 of this Complaint as if restated in full herein.

96. VIA is the owner of all right, title, and interest in the Trading System, including its program and source code.

97. Pursuant to the parties' Letter of Intent and the Purchase Agreement, the parties contemplated the joint development of a new alternative trading system.

98. The parties agreed that the intangible property rights to the Trading System, including program and source code, would be assigned to VIA, jointly further developed, and, upon payment in full of the three million dollars owed to Gregory Wilson, would transfer to Satschel, indirectly, by and through its acquisition of VIA.

99. Satschel defaulted in its obligations under the agreement and therefore never acquired the right, title, and interest to the Trading System, including the program and source code.

100. Mr. Wilson provided substantial assistance in the development of the Trading System, as such was contemplated by the parties' agreement and in consideration of the three million dollars Mr. Wilson would receive for the sale of his companies.

101. The program and source code of the Trading System constitute protectable trade secrets under SDCL § 37-29-1, because VIA took reasonable measures to keep such information secret and the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

102. Access to the program information, including source code, was restricted to executive management at VIA, the Individual Defendants, and/or a team of programmers contracted for the development of the Trading System.

103. The parties also executed the Confidentiality Agreement (Exhibit D), which protects the disclosure of confidential and proprietary information, including trade secrets, and applies to all business dealings and relations between the parties, from and after the date of the execution and survived termination following Satschel's default.

104. In violation of the South Dakota Uniform Trade Secrets Act, Defendants misappropriated VIA's confidential, proprietary, and trade secret information by effectively stealing the program and source code and operating the Trading System through Liquidity.IO.

105. Liquidity.IO was aware that the Trading System program and source code belonged to VIA because the company is primarily owned by Satschel and operated under the control, indirectly, of the Individual Defendants. Any knowledge of Satschel and the Individual Defendants is imputed to Liquidity.IO.

106. The Defendants' misappropriation is likely to continue unless it is enjoined.

107. Defendants' misappropriation of VIA's trade secrets was willful and malicious in nature.

WHEREFORE, VIA respectfully requests actual and compensatory damages in an amount determined at trial; a mandatory injunction requiring Defendants to return all intangible property related to the Trading System, including program and source code, and destroy any copies; punitive or exemplary damages under SDCL § 37-29-3; an order requiring Liquidity.IO to cease operating the Trading System; and an injunction prohibiting FINRA from permitting operation of that system.

## PRAYER FOR RELIEF

VIA and Gregory Wilson respectfully request judgment against Defendants for: (1) actual and compensatory damages, jointly and severally, in the amount of two million dollars or as determined at trial; (2) exemplary or punitive damages under 18 U.S.C. § 1836(c), SDCL § 37-29-3, and SDCL § 21-3-2; (3) disgorgement of benefits obtained through Defendants' illegal conduct; (4) unjust enrichment relief for benefits conferred on Satschel and Liquidity.IO; (5) a mandatory injunction requiring Defendants to return all intangible property related to the Trading System, including program and source code, and destroy any copies; (6) an injunction barring Defendants from using VIA's proprietary, confidential, and trade secret information to operate the Trading System at Liquidity.IO; (7) an injunction barring FINRA from permitting Liquidity.IO to operate the Trading System; (8) costs and attorneys' fees; and (9) such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

VIA and Gregory Wilson hereby demand a trial by jury.

Dated this 5th day of August, 2026.

WOODS, FULLER, SHULTZ & SMITH P.C.

By /s/ Sander J. Morehead
Sander J. Morehead
Tim R. Shattuck
PO Box 5027
300 South Phillips Avenue, Suite 300
Sioux Falls, SD 57117-5027
Phone (605) 336-3890
Fax (605) 339-3357
Email Sander.Morehead@woodsfuller.com
Tim.Shattuck@woodsfuller.com
Attorneys for Variable Investment Associates, Inc. and Gregory Wilson

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

VARIABLE INVESTMENT ASSOCIATES, INC. AND GREGORY WILSON

**(b)** County of Residence of First Listed Plaintiff LINCOLN
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
WOODS FULLER SHULTZ & SMITH, PC, 300 SOUTH PHILLIPS AVENUE, SUITE 300, SIOUX FALLS, SD 57104 (605) 336-3890

## DEFENDANTS

ERIC CHOI, AUSTIN TROMBLEY, ALINA TROMBLEY, SATSCHEL, INC., AND LIQUIDITY.IO, LLC

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
DAVENPORT EVANS HURWITZ AND SMITH, LLP, 206 WEST 14TH STREET, SIOUX FALLS, SD 57104 (605) 357-1232

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [x] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
18 U.S.C. 1836(b)

Brief description of cause:
THEFT OF TRADE SECRETS

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 2,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE CAMELA C. THEELER DOCKET NUMBER 4:23-CV-04159-CCT

DATE 08/05/2026 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.